Good morning. May it please the Court. Ben Wiesinger for Petitioner, Baudel Velazquez, who is present this morning. Let me call it first. We're making a record of our report. Beg your pardon, Your Honor. The next one is 11-73668, Velazquez-Soberanes v. Holder. I have ten minutes. Okay. Again, good morning, Your Honor. Ben Wiesinger for the Petitioner. I'd like to start by addressing your question to my colleague, Judge Silverman. The reason why putting somebody's life at risk in this case is not a crime involving moral turpitude is because it's done recklessly. Fernandez-Ruiz could not have been more clear that a reckless mens rea will not support a finding of moral turpitude. The criminal culpability is simply just not the same as moral depravity. And it's for this reason that we must be very, very careful when we call reckless crimes crimes involving moral turpitude. Are there any cases you can think of where recklessness has been found to be moral turpitude? Well, unfortunately, the Board did in the matter of Medina back in, I believe, 76. In my reading of Fernandez-Ruiz, that overruled Medina in any other cases that relied on Medina. Because other than that, the voluntary intoxication part of the recklessness definition, it reads like the model penal code definition of the definition of recklessness, which was the same definition as used in the matter of Medina. So what's your take? You heard, I read from the Supreme Court case, Engelhoff, where the Court made pretty clear that voluntary intoxication can be part of that definition. Do you disagree with that? Have we misinterpreted that? Unless I misread Engelhoff, I don't believe they were worrying about moral turpitude. They were worried about criminal culpability. And, again, the two terms are different. Crime that's involved in moral turpitude is a highly specialized creature of, I guess, a combination of years of case law. And what we do is we generally take an ad hoc approach to what is a crime involving moral turpitude. We think, okay, well, here's the statute, here's what we've decided in the past, and does this fit? The difference here is this. Let me just ask this. Let's take alcohol away from this for a moment. Thank you. If your client, I think he was involved in alcohol as well. Say he wasn't drinking. Is there any question in your mind that what he was convicted of would be turpitudinous? No, there's not, and the answer is no. The answer is no, that it would or would not be? That it would not be morally turpitudinous because it's committed recklessly. The difference between we were touching on this. Recklessness by definition cannot involve moral turpidity, right? In my opinion, yes. What about the opinion of the courts? The Ninth Circuit's on-bank decision and then the following decision and Fernandez-Ruiz, it really couldn't be more clear. The court was looking at the same exact definition of recklessness in that statute as in this statute. And one of the biggest differences here, Fernandez-Ruiz was an assault statute. And the difference between assault and endangerment is that endangerment can't be committed knowingly or willingly. It's always recklessly. It's always an accident. And the reason why we assign criminal culpability to it is because it's such a bad accident, we want to make sure that somebody learns their lesson. Suppose somebody's firing a gun in the air in the backyard. That would fit the endangerment statute, but that's no accident, right? Misuse of a firearm is actually one of the statutes in Arizona. It is a different crime. I'm not talking about that crime. I'm saying you could charge somebody with firing a gun in the air in the backyard. Correct. Could you not? Yes. That's no accident. Well, could it be? You're holding your gun. It accidentally discharges, okay. How about if you fire it on purpose in the air? I'd say that's a different crime, Your Honor. We have Megan's Law here in Arizona for that specific reason. If I want to charge it as Megan's Law or something else, that's fine. I'm saying it could fit endangerment, couldn't it? It could. And that would be if I'm a prosecutor or a defense attorney, I'm trying to work out a deal for my client or for the state to avoid trial, I would charge it. I would offer endangerment just to make sure that somebody learned their lesson that this is a bad idea. I don't understand your answer, really. I'm getting to the point that endangerment does not have to be an accident. Can't it? No. By definition. Like how? It is because it's reckless. Give me an example of an accidental endangerment. An accidental endangerment, the attractive nuisance doctrine. That's a tort doctrine, right? State versus Oregon. Okay, let me start criminal law. Give me an example of an accidental endangerment. Hit and run. Compass versus Supreme Court. The driver of a car had an accident. Hit baby accident. The run isn't an accident, is it? Correct. But that would be more akin to misprison of a felony. You're telling me about all different kinds of crimes every time I ask you about something. I'm asking what is an example of an accidental endangerment. I can't bring one to mind at the moment. An accidental, it really can be anything. Okay. Like what? Well, it could be, for example, riding a motorcycle without a helmet or glasses or any other safety equipment. Okay? You're endangering yourself. What's the accident there? You potentially don't put a helmet on, I guess. The accident is that you don't intend or know that you're actually creating this risk. And that's State versus Morgan, an opinion authored by then-Judge O'Connor. The element of recklessness that we're dealing with here is that this statute, and I'm going to quote this, this statute is designed to cover situations where the actor's reckless endangerment endangers another's well-being without the actor technically intending or knowing he is doing so. That, to me, is a definition of an accident. And based upon that idea, the idea that this reckless behavior is criminally culpable, but yet not morally reprehensible, I think is the difference in this case. Now, we have a number of cases where we look at, say, assault with a deadly weapon. Assault could technically be considered recklessly, but when you have a weapon in your hand, that is, that shows at least some more intent, some more intent to commit more harm. But I would even argue that this Court got it right in Fernandez-Ruiz. This Court got it right, and the board just thumbed their noses at this Court's ruling. Because nowhere, and I made this very clear in my brief, nowhere in matter of layout is Fernandez-Ruiz cited. And I think this Court can't allow that kind of recalibration, as the attorney general put it, of the definition of, or the result of a crime. And when we, if we start down the slippery slope, let me give the Court a couple of examples of where we end up. Reckless driving, negligent operation of a watercraft, student hazing, pollutant discharge, these are all misdemeanors, some felonies, in Arizona that can be committed recklessly and that could possibly endanger or cause, you know, create a risk of harm to others. Do we really want to go down this road? Because that's where it ends under Arizona law. Do you want to save your couple of minutes for rebuttal? Thank you, Your Honor. I appreciate that. Good morning again, Your Honor. It's Fred Sheffield again, on behalf of the attorney general. We're asking that you deny the petition for review in this case as well, because the matter, whether the crime of felony endangerment under Arizona law is squarely decided by matter of leal, and as we argued in the previous case, matter of leal warrants deference from this Court under Chevron. I want to just briefly respond to the principle argument raised by my opposing counsel regarding Fernandez-Ruiz. Fernandez-Ruiz did, in fact, address the same recklessness statute at issue in this case. Fernandez-Ruiz was a 2006 case, and I think it's important to note that Fernandez-Ruiz, in examining what is entailed with a crime involving moral turpitude, used as a starting point the notion that crimes involving moral turpitude will require a showing of willfulness or evil intent. Now, since that time, we've had the attorney general's decision in Silva Tribunal, which noted that willfulness or evil intent are, in fact, two of the potential mens reas available for crimes involving moral turpitude. But recklessness is, in fact, yet another mens rea that's possible for a crime involving moral turpitude. And the reason was that it was an assault case, a simple assault. Correct. Not an imminent death case. Not an imminent death case. That's another reason why I think it's of somewhat limited applicability here, because the board sensed Fernandez-Ruiz in a case called Ruiz-Lopez, which was cited in this case. The board, and this was something I mentioned earlier in the previous case, has noted that the notion of aggravating factors is something that applies in assault cases, and it does not necessarily apply in these cases. Endangerment cases, in recent years in particular, I think, have charted somewhat of a different path than assault cases. And if you look at the Supreme Court or, I'm sorry, this Court's decision in Upal, the Supreme Court's decision in Upal that's something that we see. That's at page 718 on Upal, just for your later referencing. The Court goes through that Upal involved a Canadian assault statute. And Upal recognized that in many cases where assault has been committed recklessly, it requires an aggravating factor. And then Upal turned to a string of endangerment cases. And that's a string of endangerment cases that this board cited to in this case as well. And these are cases out of the Third Circuit. These are cases out of the Eleventh Circuit, which they're cited in our brief. I believe Knapik and Cooney are two of them. And they, in fact, I think Knapik involved a New York recklessness definition, which is almost exactly the same as the potential that someone might be unaware of their actions due to their own subjective voluntary intoxication. As I read the board's decision, it didn't analyze voluntary intoxication as a component of recklessness in Arizona. How does that affect this case? Can you repeat that question, Your Honor? The BIA did not analyze voluntary intoxication as a component of recklessness in Arizona. How does that affect this case? I think the board did. Are you talking about the Leal decision or are you talking about the board's decision in this particular case? This particular case. This particular case was actually decided before Leal. So the board at the time that this decision was rendered did not have the benefit of Leal, and it was an unpublished decision. So what we're arguing is that actually this case, while it did not rely on Leal because Leal had not been issued yet, the case is nevertheless squarely controlled by Leal. In essence, remanding to the board would simply be a formality, because we would simply be asking the board to apply Leal, which it clearly would, because the question is exactly the same. I was just going to say, we had asked counsel to, petitioners to confer, to see if they all agreed with that point, that Leal really controls here. They did not want to do it that way, I understand. But is it the government's position that this case rises and falls on the BIA's analysis in Leal? Absolutely. Leal squarely controls this case. I just want to reinforce, in my time remaining, I just want to reinforce the notion that both the board and this court have acknowledged as a potential mens rea for a crime involving moral turpitude. That goes back to 1976, when the board explicitly rejected prior case law in Medina, and held that recklessness is a potential form of scienter for a crime involving moral turpitude. The matter of Wojtko, which was in 1981, was a subsequent decision, held precisely the same thing. Also involved a New York manslaughter statute, which included the add-on for voluntary intoxication. Matter of Franklin was another one. Ruiz Lopez in 2011. In essence, what I'm getting at is there's a long string of cases in which the board has repeatedly held that recklessness is a potential form of mens rea for a crime involving moral turpitude. The fact that Ruiz Lopez limited its analysis to whether a crime involving moral turpitude might be such, only if it's willful or with evil intent, needs to be viewed in the context of Silva Trevino, which came later. And it needs to be viewed in the context of Marmolejo Campos, which also deferred in some respects to Silva Trevino. Counsel, I'd appreciate your thoughts on the following. I heard a opposing counsel talk to us about a slippery slope involving recklessness. And he cited a number of things from hazing to watercraft and the like. Is that what we ought to be looking at? Or in this case, do we look at the actual statute where recklessness is defined in a way that wouldn't involve very likely any of the things he was talking about? There's a specific reference to something that's just grossly beyond anything that a reasonable person would do, puts people at risk of imminent death or serious bodily injury. Don't we have to confine? It isn't recklessness as a broad category. It's recklessness as defined by the statute. Is that correct? It's recklessness as defined by the statute. And perhaps just as importantly, it's recklessness when seen in connection with the actus reus for this offense, which is creating a substantial risk of imminent death. The fact that someone might act recklessly, the fact that someone might voluntarily intoxicate themselves, is not by itself a crime involving moral turpitude, because it's not a crime to simply act recklessly. You need an actus reus associated with the offense. And in this case, the actus reus is an important part of the board's analysis, and that's exposing someone to a substantial risk of imminent death. I think when we listen to opposing counsel talk about some of these hypotheticals, it calls to mind the very reason why the categorical approach was introduced and why the realistic probability approach was introduced, because we don't simply engage in imagining hypotheticals. When I look at the actual Arizona cases in which endangerment has been charged, I see some very serious, and what I would view morally turpitudinous offenses, people firing into houses. There's one, the water pollutant case that opposing counsel mentioned. These are managers that, from what I remember, encouraged their employers to go down into a tank filled with raw water pollutants, and they were actually dying. These are not simply trivial offenses. Under Arizona law, endangerment requires an actual risk. It requires an actual victim. These are not hypothetical dangers. Subject to the Court's questions on this case, I would again reiterate our position that this case is squarely controlled by Leal, even though it was decided prior to Leal, and therefore the petition should be denied. Thank you, Mr. Sheffield. Turpitude comes from the Latin turpus, meaning vile or base. We have to get back to what was originally intended with moral turpitude. An evil or malicious intent is said to be the essence of moral turpitude. The BIA got it right on that one. It's a matter of Flores. The BIA got it right in a number of different cases where they rely on intent. What is the actor's intent? I would reiterate that this Court, when it published Fernandez-Ruiz, swept away any case that might have said, well, a recklessness can be the correct intent for a CIMT. This was a present decision from this Court. I think we need to stand by our guns on this one, because it was a very important decision that said, we're going to get back to what is moral turpitude. We're going to get back to the actor's evil intent. It's simply not present here. Do the facts of a case as opposed to what is said in a general sense have any relevance? Fernandez-Ruiz involved a very different statute, a very different situation. If the Court said something about a CIMT, in that case, is it your thought that that applies to all cases involving CIMTs? I think it's a very good idea to do so. I don't like it, but is that what the law says? Well, yes, it is, because the Court said that the recklessness will not support, is not intentional conduct. In that case? We were discussing the same statute, the same definition of recklessness. How about driving while intoxicated on a suspended license? That is a general intent crime. There's no intent required for that, Your Honor, so it's not a CIMT. Again, I think that if we use matter of layout and take that to its next logical step, the exception is going to swallow the rule, and we can't allow that. Thank you very much.
judges: Nelson, Silverman, Smith